OPINION OF THE COURT
John M. Hunt, J.
*938 Procedural History
On May 19, 2015, under docket No. NN-09480/15, the Administration for Children’s Services (hereinafter petitioning agency or ACS) filed a petition pursuant to Family Court Act § 1012 against Brittany O’L.-F. (hereinafter respondent mother or mother) and Ruperto F., Jr. (hereinafter respondent father or father) (hereinafter collectively respondents or parents) with respect to Robin T.F. (hereinafter Robin), born in May 2015. The petition alleged inadequate supervision and guardianship. Amongst the allegations against the respondent mother were the following: (1) that upon Robin’s birth, both she and Robin tested positive for marijuana; (2) that since she was 15 years of age, the respondent mother has been using marijuana; (3) that she suffers from mental illness for which she has been hospitalized, but has failed to engage in mental health treatment; and (4) that after a hysterical outburst, she discharged herself from Jamaica Hospital against medical advice. Amongst the allegations against the respondent father were the following: (1) that he was aware of the respondent mother’s marijuana use but was nevertheless planning to care for Robin with her; (2) that he supplied the respondent mother with marijuana even during her pregnancy; (3) that he suffers from mental illness but had discontinued some of the medication prescribed to help him sleep; and (4) that since December 2014, he missed one or two of his mental health treatment appointments. The petition also alleges inadequate shelter against the respondent mother and the respondent father, in that, there were “many flies through the home, including many flies near the proposed bedroom for [Robin].” On October 16, 2015, pursuant to Family Court Act § 1051 (a), the Honorable Connie Gonzalez (hereinafter Judge Gonzalez) issued a fact-finding order against the respondent mother and the respondent father. {See order of fact-finding, Fam Ct, Queens County, Oct. 16, 2015, Gonzalez, J., docket No. NN-09480/15.) On June 28, 2016, Judge Gonzalez issued a dispositional order in the matter. {See order of disposition, Fam Ct, Queens County, June 28, 2016, Gonzalez, J., docket No. NN-09480/15.) The dispositional order directed the parents, inter alia, to comply with mental health treatment, to complete a substance abuse program, and to comply with random drug screens. {See id.)
On August 24, 2016, the petitioning agency filed a second petition against the respondent mother and the respondent father. The second petition alleges derivative neglect; to wit, that the respondent mother and respondent father, inter alia, *939 suffer from mental illness and fail to comply with treatment such that it affects the care of their after-born child, Virginia T.F. (hereinafter Virginia), born in August 2016. On February 1, 2017, the petitioning agency filed an amended petition. The amended petition added allegations against the respondent mother and the respondent father regarding events that occurred after the initial petition’s filing date. Amongst the added allegations against the respondent mother were the following: (1) that she had missed multiple sessions of the substance abuse program into which she had been ordered; (2) that she left Samaritan Village, a “mother-daughter” program, which she had agreed to enter; and (3) that she withdrew her releases in violation of her dispositional order such that her mental health provider could not obtain adequate information about her treatment. Amongst the allegations against the respondent father were the following: (1) that he routinely left Virginia with her paternal grandfather for days at a time without notice; and (2) that in violation of a court-issued order of protection, he left Virginia in her paternal grandmother’s home, which ACS had not cleared, and where he knew that the respondent mother was residing. On March 2, 2017, pursuant to the Queens County Family Court trial part protocol, the trial in the “after-born” matter was assigned to the court.'1 On that same date, the trial commenced.
The Evidence
The petitioning agency’s sole witness was Child Protective Specialist Cynthia Gallardo (hereinafter Ms. Gallardo). The petitioning agency provided, as documentary evidence, an oral report transmittal to the Central Register of Child Abuse and Maltreatment, and the court took judicial notice of relevant court orders and decisions. The respondent mother appeared on the first day of trial but, after disrupting the proceeding, she thereafter willfully absented herself from the courtroom and was not seen for the rest of the trial. The respondent father was present throughout, but did not testify on his own behalf.
Ms. Gallardo testified that, upon the original petition’s filing, Virginia was not ordered removed from her parents’ care. Neither that petition, nor the amended petition, make reference to that fact, or ACS’s subsequent failed efforts to seek a remand *940 of Virginia to foster care. Virginia is currently living with her paternal grandfather, with her father’s consent, under ACS supervision. Ms. Gallardo candidly admitted that ACS did no prenatal planning with the parents nor did ACS assist the parents in any way to find housing. Rather, it appears, ACS’s first and only response to the family’s needs was to file a petition and seek to place Virginia in foster care with her sister, Robin. Ms. Gallardo testified that her only observation of Virginia and her mother together was in the hospital at the time of Virginia’s birth. She told the court that at that time, just days before the original petition’s filing, the respondent mother was in compliance with all services to which she was referred in connection with the disposition in Robin’s case. Ms. Gallardo testified that the parents were then living in a family shelter and had a housing voucher. She further testified that the respondent mother had completed a parenting skills program, reengaged in outpatient mental health services with a therapist, and entered in outpatient drug treatment. The petitioning agency adduced no evidence of any kind as to the respondent father’s compliance or lack of compliance with any service plan.
Ms. Gallardo did testify that in September 2016, the respondent mother relapsed. This occurred just weeks after the original petition’s filing and at a time when both parents were still living with Virginia in the family shelter where they had been residing when Virginia was born. According to the respondent mother’s statements to Ms. Gallardo, she felt “overwhelmed and sad,” “very frustrated, struggling, upset with [the father’s] parenting style.” The respondent mother stated that after an argument, she left Virginia with the respondent father and proceeded to “drink and smoke marijuana” over a period that appears to have extended from the evening of September 26, 2016, until the following morning. During this 24 hour period, the respondent mother reportedly missed a group session held by her substance abuse program.
Ms. Gallardo testified that she was aware of one substance abuse screen at the end of September 2016, after which the respondent mother tested positive for alcohol and marijuana, which is consistent with the respondent mother’s admitted relapse. An earlier test in March 2016, at Samaritan Village, was negative. There was no other evidence of the respondent mother’s substance abuse. With respect to the specific mental health concerns raised in both the original petition and the amended petition, Ms. Gallardo conceded that she never *941 personally referred the respondent mother for a mental health evaluation and that she had no knowledge of any hospitalization during the pendency of the proceedings involving the respondent mother.
As a result of the respondent mother’s relapse in September 2016, and prior to the amended petition’s filing, the respondent mother’s contact with Virginia was limited by a precautionary order of protection to agency supervised visitation. Ms. Gal-lardo testified that the respondent father told her that he thereafter knowingly permitted the respondent mother to have contact with Virginia in violation of the order of protection’s conditions for contact. Although she herself had no personal knowledge of any contact between the respondent mother and Virginia, Ms. Gallardo stated that the respondent father admitted allowing Virginia to stay with her paternal grandmother despite being aware that the respondent mother was residing in that home which ACS had found unsuitable for an infant. According to Ms. Gallardo, the respondent father also admitted to leaving Virginia with her paternal grandfather because he could not find any other child care.
Legal Analysis
As a preliminary matter, the court finds that the only witness to testify, Ms. Gallardo, was credible. In evaluating the current amended allegations against the respondents, it must be noted that no direct harm to either child has been claimed in any of the various neglect petitions which ACS brought regarding Virginia or Robin. The gravamen of the current amended petition is that Virginia is a “derivatively” neglected “after-born” child, and that if not “derivatively” neglected, there is independent proof of neglect based on evidence of the respondent mother’s instability due to a drug/alcohol relapse and the respondent father’s failure to protect Virginia by not enforcing a court-issued order of protection and responsibly providing Virginia with adequate supervision.
In a child protective proceeding, it is the petitioning agency’s burden to prove its case by a preponderance of the evidence. (See Matter of Abbygail H.M.G. [Christine Y.], 129 AD3d 722, 723 [2d Dept 2015]; see also Matter of Jada K.E. [Richard D.E.], 96 AD3d 744, 744 [2d Dept 2012].) Family Court Act § 1046 provides that proof of neglect of one child is admissible to prove neglect of another child. (See Family Ct Act § 1046 [a] [i]; see also Matter of Jahmya J. [Crystal L.J.], 137 AD3d 1132, 1133 *942 [2d Dept 2016].) However, there is no per se rule dictating that a neglect finding of one sibling mandates a derivative neglect finding as to that child’s siblings. (See Matter of Padmine M. [Sandra M.], 84 AD3d 806, 807 [2d Dept 2011] [holding that credible evidence did not support derivative neglect finding]; see also Matter of Andrew B.-L., 43 AD3d 1046, 1047 [2d Dept 2007] [finding derivative neglect as to target child’s siblings was unwarranted].) To that end, a neglect finding, without more, does not establish that siblings of a child found to be neglected have been derivatively neglected. (See Matter of D.S. [Shaqueina W.], 147 AD3d 856, 858 [2d Dept 2017] [finding respondent’s conduct with target child did not show that respondent derivatively neglected and/or abused sibling]; see also Matter of New York City Dept. of Social Servs. v Alex R., 209 AD2d 702, 702-703 [2d Dept 1994] [neglect, standing alone, does not make out a prima facie case of derivative neglect].) Rather, derivative neglect must be proved through evidence that a respondent’s neglect of one child constitutes a fundamental defect in that person’s understanding of their parental duties. (See Matter of Jahmya J., 137 AD3d at 1133 [holding ACS did not establish derivative neglect by a preponderance of the evidence]; see also Matter of Angelica M. [Nugene A.], 107 AD3d 803, 804-805 [2d Dept 2013] [father’s sexual abuse convictions established fundamental defect in understanding of parental duties; derivative abuse findings upheld]; Matter of Abigail G. [Barrington G.], 84 AD3d 1235, 1235 [2d Dept 2011] [derivative neglect affirmed as to one child where father’s excessive corporal punishment towards other child constituted fundamental defect in understanding of his parental duties]; Matter of Jahyalle F., 66 AD3d 1019, 1019-1020 [2d Dept 2009] [affirming derivative neglect finding where parent punished her child by placing him in a hot oven]; Matter of Sophia P., 66 AD3d 908, 909 [2d Dept 2009] [derivative neglect affirmed where parent locked her children out of the house overnight, and locked one of the children in her room when she left to run errands]; Matter of Derek J., 56 AD3d 558, 559 [2d Dept 2008] [where parent beat her children with a wire or belt causing injuries, derivative neglect finding affirmed].) Within the analysis, a court must consider whether a parent’s underlying neglectful conduct is sufficiently proximate in time to reasonably conclude that the injurious condition still continues and may exist in the foreseeable future. (See e.g. Matter of Dayyan J.L. [Autumn M.], 131 AD3d 1243, 1245 [2d Dept 2015] *943 [conduct forming basis of most recent neglect finding sufficiently proximate in time to derivative neglect proceeding; presumed that condition still existed]; Matter of Camarrie B. [Maria R.], 107 AD3d 409, 409 [1st Dept 2013] [finding Family Court properly granted summary judgment where prior findings entered 10 months before derivative neglect finding]; Matter of T-Shauna K., 63 AD3d 420, 420 [1st Dept 2009] [respondent’s conduct warranting neglect finding so close in time to derivative proceeding to reasonably conclude condition still existed; order affirmed]; Matter of Amber C., 38 AD3d 538, 540 [2d Dept 2007] [affirming derivative finding where neglect findings entered nine and seven months prior to subject child’s birth]; Matter of Cassandra C., 300 AD2d 303, 304 [2d Dept 2002] [upholding derivative finding where subject child was born approximately four months after abuse finding against respondent]; cf. Matter of Elijah O. [Marilyn O.], 83 AD3d 1076, 1077 [2d Dept 2011] [reversing and remitting summary judgment on derivative neglect where subject child was born over three years after abuse finding against respondent]; Matter of Dana T. [Anna D.], 71 AD3d 1376, 1376-1377 [4th Dept 2010] [reversing and dismissing petition where respondent mother consented to neglect finding regarding older children five years prior to subject child’s birth, too remote for derivative finding].)
In the instant case, the fact pattern of neglect underlying the predicate finding against the parents in Robin’s case involves events and conditions that occurred over a period of many years leading up to Robin’s birth in 2015. The parents had apparently neither recognized nor sought help for their drug dependancy and mental health issues and had therefore never been involved in any services to remedy them. The untreated substance abuse and mental health problems alleged in that petition, and upon which the predicate findings were made, were such that clearly Robin’s, or for that matter any other infant’s, “physical, mental or emotional condition” would obviously be “in imminent danger” of harm. However, the original petition’s facts are not the facts in this petition. Although the parents’ performance in the court-ordered service plan in Robin’s case has not been perfect, the parents have each cooperated with it. Ms. Gallardo described the respondent mother as compliant with all services at the time of Virginia’s birth. The respondent mother had completed a parenting skills program, was engaged in mental health counseling and drug abuse treatment, and tested negatively for marijuana and *944 alcohol well after that first petition was filed. It is no wonder that Virginia was originally paroled to her and the respondent father at the time that Virginia’s original petition was filed. Moreover, in February 2017, during the course of proceedings and prior to the filing of the amended petition, the respondent father’s progress since Robin’s birth was apparently such that Virginia was entrusted to his care by multiple court orders even after the respondent mother’s relapse in September 2016. This court concludes that the level of both parents’ participation in services, pursuant to the disposition in Robin’s case, is sufficient to show a change of circumstances and understanding on both of their parts. As a result, there is no basis for this court to find Virginia to have been derivatively neglected by either parent based on a prior finding.
What remains for this court to consider is whether one or both of the parents neglected Virginia as a result of any of their acts or omissions as testified to by Ms. Gallardo. The most serious act committed by either respondent since the neglect finding was entered against them was the respondent mother’s use of marijuana and alcohol during, what the record shows to have been, an emotionally charged 24 hour relapse. At the time of that relapse, she had either completed, or was meaningfully engaged in, a services plan directed by court order. Moreover, the amended petition was filed five months after that relapse and alleges no further drug use or lack of compliance with services. There is simply no proof that the respondent mother continued to abuse marijuana or alcohol, or that she did not properly address, through continued services, this apparent aberration in what had been a positive process of recovery. There is certainly no evidence that she ever placed Virginia in harm’s way as a result of her relapse. It should be noted that during that relapse, her impulsive behavior did not overwhelm the insight she appears to have obtained during the course of her mental health and substance abuse treatment. In that regard, she separated herself from the respondent father and Virginia during the 24 hour time period in question and admitted her wrong choices to Ms. Gallardo the very next morning. There is no further evidence in this record that the respondent mother failed to comply with any services offered to her.
Moreover, there has been no proof at all that the father failed to comply with any service plan ordered to address his rehabilitative needs. As previously stated, Virginia was *945 released to him on multiple occasions, a fact that this court considers positive corroboration of his cooperation with ACS’s service goals. The only possible case of neglect against the respondent father involves the following evidence: (1) that he admittedly ignored a court order by either directly or indirectly allowing the respondent mother an opportunity to be with Virginia; (2) that he left Virginia in a relative’s home that ACS thought inappropriate; and (3) that he left Virginia with his own father without making appropriate arrangements for her care. With respect to the first allegation that he permitted the respondent mother access to Virginia despite a court order, there is no evidence at all as to the length of time Virginia was with respondent mother, or what the respondent mother’s physical or mental condition was at the time she may have been with Virginia. Certainly, there is no evidence that Virginia was in any way harmed by her mother during any of these otherwise forbidden contacts. All this record proves is a violation of an order of protection at best. Such proof, standing alone, is insufficient to establish neglect. (See Matter of Abbygail H.M.G., 129 AD3d at 723; see also Matter of Jada K.E., 96 AD3d at 745.) Evidence of the remaining allegations against the respondent father regarding Virginia staying at the “unapproved” relative’s home, as well as the claim of inadequate arrangements for her care by her paternal grandfather, are too vague to establish what the conditions were in either home, let alone establish any form of neglectful conduct on the respondent father’s part. For all the above reasons, the court finds that the petitioning agency has failed to prove that either parent neglected Virginia. Accordingly, the amended petition is dismissed.
Adjudged that the petitioning agency has failed to meet its burden of proof as to every element of the neglect allegations within the amended petition against the respondent mother and the respondent father; and it is further adjudged that the petitioning agency has failed to proffer direct or indirect proof of derivative neglect as alleged within the amended petition against the respondent mother and the respondent father; and it is therefore ordered that the petition is dismissed as to the respondent mother and the respondent father, for failure of the petitioning agency to meet its burden of proof with respect to every element of the case; and it is further ordered that all orders are vacated; and it is further ordered that all future court dates are vacated.

 Under the Queens County Family Court trial part protocol, trial part judges are randomly assigned to try cases wherein the parties announce readiness for trial.